IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02649-NRN

GERALDINE GONZALES,

Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

Defendant.

---

**OPINION AND ORDER**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Geraldine Gonzales was not disabled for purposes of the Social Security Act for the period from April 15, 2015 through December 8, 2017, the date of the decision. (AR[1] 16.) Ms. Gonzales has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #13.)

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##11, and 11-1 through 11-13.)

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Ms. Gonzales "has the following severe impairments: generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder (PTSD), degenerative disc disease of lumbar and cervical spine, venous insufficiency, obesity, and diabetes mellitus." (AR 18.) The ALJ then determined at step three that Ms. Gonzales "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 18-22) Because he concluded that Ms. Gonzales did not have an impairment or combination of

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

2

impairments that meets the severity of the listed impairments, the ALJ found that Ms. Gonzales has the following residual functional capacity ("RFC"):

> . . . [Ms. Gonzales] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must never be required to climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can constantly balance, but only occasionally stoop, kneel, crouch, and crawl. The claimant is further limited in that she must avoid frequent use of moving and/or dangerous machinery, and frequent exposure to unprotected heights. She must avoid frequent exposure to irritants such as fumes, odors, dusts and gases, and poorly ventilated areas. She must also avoid all driving of motor vehicles at work. The claimant is further limited to work that consists of only simple, routine, repetitive tasks. She is able to maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal breaks, but only in work that consists of no more than simple, routine, repetitive tasks. She is further limited to work that requires no more than frequent interaction with the public, coworkers, and supervisors, and to work that requires no more than occasional supervision, which is defined as requiring a supervisor's critical checking of her work.

(AR 22.)

The ALJ concluded that Ms. Gonzales was unable to perform past relevant work. (AR 29.) However, at step five, the ALJ found that, considering Ms. Gonzales's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including Routine Clerk, Office Helper, and Mail Sorter. (AR 32.) Accordingly, Ms. Gonzales was deemed not to have been under a disability from the alleged onset date of April 22, 2015, through December 8, 2017, the date of the decision. (AR 33.)

## Analysis

Ms. Gonzales argues that the ALJ's decision should be reversed because he did not assign any specific weight to the medical opinions of two examining psychologists, Dr. Carlos Rodriguez and Dr. David Benson. In contrast, the ALJ gave great weight to the opinion of non-examining psychologist Dr. Ronald Houston.

**Dr. Rodriguez's Opinion**

Dr. Rodriguez conducted a psycho-diagnostic interview on May 17, 2017. (AR 770-77.) His review of Ms. Gonzales' mental health records from January 2015 through January 2017 indicated that she "was diagnosed with and treated for a Major Depressive Disorder." (AR 770.) Dr. Rodriguez made the following observations during the examination:

> Geraldine presents with flat affect and a depressed demeanor. She was cooperative during this evaluation and wore sunglasses throughout the evaluation. She wears prescription glasses for reading. She does not display any expressive or receptive deficits. Gerald[i]ne presents appropriately dressed and adequately groomed for this evaluation. Her speech is goal directed and coherent. Her thought processes and her speech do not reflect the presence of rapid thinking, delusions, hallucinations, confused thinking, flight of ideas, or other psychotic manifestations. On Mental Status Examination, Gerald[i]ne is oriented to person, place, and time. Abstraction ability is intact given her appropriate responses to similarities type questions. For example, when asked how a dog and a lion are alike, she responded, "They're animals." Her responses to comprehension type questions indicate deficits in basic social judgement. For example, when asked what she would do if she seen [sic] smoke and fire while in a theater, she responded, "Yell fire." Gerald[i]ne appears to possess low average to borderline intelligence. Gerald[i]ne is cooperative and present evaluation results are believed to be accurate.

(AR 771.)

Dr. Rodriguez then summarized Ms. Gonzales' history of physical and sexual abuse, which led to her PTSD; her "long history of depressive symptoms that manifested in sadness, discouragement and crying spells at least 3-4 times a week"; her history of alcohol abuse; her educational background; and her daily activities. (AR 771-73.) Dr. Rodriguez found diagnoses of PTSD, Major Depressive Disorder, and Alcohol Use Disorder (in sustained remission) to be appropriate. (AR 773.) Dr. Rodriguez concluded, "Gerald[i]ne's ability to engage in basic work related activities including understanding, memory, sustained concentration, persistence and pace, social interaction and adaptation are moderately to significantly impaired due to her psychopathology noted above." (*Id.*)

Dr. Rodriguez also completed a RFC evaluation. (AR 775-77.) In addition to the marked impairments noted above, he found that Ms. Gonzales would be off task more than 30% of the work week and her mental impairments would cause three or more days of work absences per month. (AR 776.) Dr. Rodriguez stated that Ms. Gonzales' mental impairments had been at the severity levels listed since at least July 8, 2016, the first date he examined her. (AR 777.)

**Dr. Benson's Opinion**

Dr. Benson examined Ms. Gonzales on August 25, 2017. (AR 781-90.) During the examination, Ms. Gonzales "was alert and fully oriented. Her memory was intact, and she was able to reconstruct life events with general accuracy." (AR 789.) However, Ms. Gonzales' "abstract thought is only fair," and "[h]er judgment is fair to poor." (*Id.*) Based on his examination, Dr. Benson determined

that, regarding her understanding, memory, concentration, and persistence, Ms. Gonzales was not impaired in her ability to understand, remember, and carry out simple instructions, or make judgments on simple work-related decisions, and she was mildly impaired in her ability to understand, remember, and carry out complex instruction, or make judgments on complex work-related decisions. (AR 789.) As to social interactions, Ms. Gonzales had moderate impairments in her ability to interact appropriately with the public, supervisors, and peers, and moderate impairment in her ability to respond appropriately to usual work situations and to changes in routine work settings. (AR 790.)

**Dr. Houston's Opinion**

At the hearing held on August 30, 2017, the ALJ heard the medical opinion testimony of Dr. Houston, a clinical psychologist who reviewed Ms. Gonzales' medical records. (AR 67-76.) Dr. Houston considered the listing requirements for Major Depressive Disorder, Generalized Anxiety Disorder, and PTSD (listings 12.04, 12.06, and 12.14, respectively). (AR 69.) He stated that Ms. Gonzalez had no limitations in her ability to understand, remember, or apply information; moderate limitations in her ability to interact with others and her ability to concentrate, persist, and maintain pace while working; and mild limitations in her ability to adapt and manage herself. (AR 71-72.) Dr. Houston further opined that Ms. Gonzales was limited in her ability to carry out complex instructions, but not simple ones; that she could frequently interact with the public, coworkers, and supervisors; that her ability to use routine judgment and deal with routine changes in the workplace was not limited; and that she was

6

able to maintain sufficient attention and concentration for two-hour segments of a workday. (AR 74-75.)

Dr. Houston acknowledged that his opinion was inconsistent with that of Dr. Rodriguez. He explained:

> . . . if you go beyond evaluation to the residual functional capacity evaluation, [Dr. Rodriguez]'s got a lot of marked [limitations] there in sustained concentration, persistence. He's got one marked understanding and memory. Also interactions a couple of marked; adaptation one marked. You know, I went through his paperwork and I didn't see anything in support of that. I know that he reviewed . . . the Health Solutions [records]. I didn't see anything when I went through [the records], and I certainly didn't see any indications of limitations at that level.

(AR 75-76.)

**The ALJ's Findings**

With regard to Ms. Gonzales' mental impairments, the ALJ summarized the medical opinions of Drs. Rodriguez, Benson, and Houston, but only assigned a specific weight to that of Dr. Houston. He found, in relevant part:

> Dr. Houston stated the opinion of Dr. Rodriguez was contradictory to his findings, but that opinion went beyond his evaluation findings, specifically in maintaining attention and concentration, social interaction, and adaption. These findings are given great weight. The findings are consistent with all of the evidence, and note where they disagree with other opinions in the record. The findings incorporate the claimant's latest allegations and account for her testimony on her mental impairments.

(AR 26-27.)

**Discussion**

Ms. Gonzales contends that the ALJ's summary of Dr. Rodriguez and Dr. Benson's opinions is insufficient under the regulations. She argues that the ALJ

7

was required to analyze these opinions, assign them a weight, and explain why that particular weight was appropriate.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(1), (2); 20 C.F.R. § 416.927(1), (2); SSR 96–6p, 1996 WL 374180, at *2). No matter the relationship, the ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted).

The ALJ must consider the following factors when evaluating all medical opinions:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the

source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

First, it is undisputed that the ALJ did not explain what weight, if any, he gave to either examining psychologist's opinion. This, on its face, is an error. However, the Commissioner claims that it is apparent from the ALJ's decision that he did not give much weight to Dr. Rodriguez's opinions, and that remanding this case simply to have the ALJ repeat the reasons Dr. Houston cited would serve no purpose. In response, Ms. Gonzales makes a compelling argument that the ALJ may not delegate his authority to weigh medical opinions to a non-examining doctor, and that even if he could, it was inappropriate to do so here given Dr. Houston's failure to consider all the necessary factors.

The Court recognizes that the ALJ was free to give more weight to Dr. Houston, a non-examining psychologist, "if he provides a "legally sufficient explanation for doing so." *Robinson*, 366 F.3d at 1084. Moreover, the ALJ's reason for giving greater weight to Dr. Houston's opinion—that it was more consistent with the record as whole—is a legitimate basis for determining the weight to be afforded an opinion. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."). However, if Dr. Houston's opinion, and, by extension, the ALJ's decision essentially incorporating that opinion, is not supported by substantial evidence, the case must be remanded.

Dr. Houston testified that he reviewed therapy notes from Dedra Wallace at Health Solutions and did not see anything in those records to support the limitations found by Dr. Rodriguez. (AR 75-76.) The ALJ apparently agreed. (AR 27.) The Health Solutions records are 71-pages long. (AR 571-640.) Neither the ALJ nor Dr. Houston pointed to any specific inconsistent evidence contained therein. The ALJ also gave great weight to Dr. Houston's testimony that Dr. Rodriguez's RFC evaluation was contradictory to and went beyond his own findings, "specifically in maintaining attention and concentration, social interaction, and adaptation." (AR 27.) But again, the ALJ does not specify the nature of the alleged contradiction. Given this perfunctory analysis, there was no "meaningful[] discuss[ion of] which portions of the [opinion] were consistent (or inconsistent) with what evidence." *Silver v. Colvin*, No. 12-cv-00771-PAB, 2014 WL 1292932, at *4 (D. Colo. Mar. 31, 2014). In the absence of this discussion, the Court cannot attempt to reconstruct the ALJ's reasoning. *Id. See also Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (holding that reviewing court cannot provide post hoc justification for the ALJ's decision). Thus, the Court "cannot determine whether the weight given to Dr. [Houston's] opinion was supported by substantial evidence because the ALJ failed to sufficiently set forth the reasons why []he gave Dr. [Houston's] opinion great weight." *Id.*

As to the ALJ's failure to assign weight to Dr. Benson's opinion, the Commissioner argues that any error is harmless because Dr. Benson's opinion was consistent with Dr. Houston's findings. Ms. Gonzales points out that the ALJ's RFC determination is inconsistent with Dr. Benson's findings of moderate

restrictions on Ms. Gonzales' ability to respond appropriately to usual work situations and changes in routine work setting (AR 790), and these inconsistencies should have been addressed in the decision. The Court agrees with Ms. Gonzales. Dr. Houston found that she had no limitations in these areas. (AR 74-75.) This discrepancy should have been addressed by the ALJ in his RFC finding, and should have been included in his hypothetical to the vocational expert. *See Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished) ("The limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments Dr. Mellon found. Rather, the ALJ was required to express those impairments 'in terms of work-related functions' or 'work-related mental activities.' As a result, the ALJ's reliance on the jobs the VE identified in response to the hypothetical was not supported by substantial evidence.") (brackets and citation omitted).

  Finally, neither of the ALJ's errors can be considered harmless, as the Court cannot conclude that no reasonable factfinder could have reached a different conclusion had the weight of the medical opinion evidence been adequately explained and supported by substantial evidence. *See Allen*, 357 F.3d at 1145 (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could

have resolved the factual matter in any other way"). Accordingly, the case must be remanded for further proceedings.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 16th day of May, 2019.

BY THE COURT:

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge